**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINA**
**Richmond Division**

|  |  |
|---|---|
| DAG AMMO CORP., a Virginia Corporation, and GRASSO HOLDINGS, INC., a Kansas Corporation,<br><br>      Plaintiff,<br><br>  v.<br><br>KM TRADE d.o.o, a company organized in Bosnia and Herzegovina, NIHAD MASIC, an individual, and KADRIJA KOLIC, an individual,<br><br>      Defendants. | Case No. **3:21cv00332**<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiffs DAG Ammo, Corp. ("DAG Ammo") and Grasso Holdings, Inc. ("Grasso Holdings") (collectively "Plaintiffs"), for its Complaint against Defendants KM Trade d.o.o ("KM Trade"), Nihad Masic ("Masic"), and Kadrija Kolic ("Kolic") (collectively, "Defendants"), alleges as follows:

**THE PARTIES**

1.  Plaintiff DAG Ammo, Corp. is a corporation organized and existing under the laws of the State of Virginia with its principal place of business at 1127 International Parkway, Suite 222, Fredericksburg, Virginia 22406.

2.  Plaintiff Grasso Holdings, Inc. ("Grasso Holdings") is a corporation organized and existing under the laws of the State of Kansas with its principal place of business at 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603.

3.      Defendant KM Trade d.o.o. ("KM Trade") is a company organized and existing under the laws of the country of Bosnia and Herzegovina.  On information and belief, KM Trade has as its principal place of business at Hifzi Bjelevca 40, Bosnia & Herzegovina.

4.      Defendant Kadrija Kolic ("Kolic") is a resident of the country of Bosnia and Herzegovina. On information and belief, Mr. Kolic is a 50% owner and shareholder of KM Trade.

5.      Defendant Nihad Masic ("Masic") is a resident of the country of Bosnia and Herzegovina.  On information and belief, Mr. Masic is a 50% owner and shareholder of KM Trade.

**JURISDICTION AND VENUE**

6.      This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims at issue are governed by the laws of the United States.  This include the federal Defend Trade Secrets Act, pursuant to 18 U.S.C. § 1836, *et seq*.

7.      This Court has personal jurisdiction over all of the Defendants because they have each committed acts of trade secret misappropriation in violation of 18 U.S.C. § 1836, *et seq.* in this District. Each Defendant directly and/or through their subsidiaries, divisions, groups, or distributors has interfered with and undermined Plaintiff's business in this District through the use and/or distribution of Plaintiffs' Trade Secrets.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants have committed acts of trade secret misappropriation in violation of 18 U.S.C. § 1836, *et seq.* in this District and is subject to personal jurisdiction in this District. In addition, venue is proper in this District because DAG Ammo has a principal place of business in this District and has suffered harm in this District.

**BACKGROUND**

9.      DAG Ammo is an American company based in Fredericksburg, Virginia specializing in the importation and wholesale distribution of ammunition in the United States.

2

DAG Ammo was formed in 2010 by Mr. Dominic Grasso, current President of DAG Ammo.

10.     Grasso Holdings is an American company based in Topeka, Kansas specializing in the distribution of ammunition in the United States. Mr. Charles Edgar Grasso ("Grasso"), brother to Mr. Dominic Grasso, is the Chairman and sole shareholder of Grasso Holdings.

11.     In 2015, Grasso Holdings acquired a majority of issued shares of Pobjeda Technology Gorazde ("PTG"), an ammunitions factory located in the country of Bosnia and Herzegovina.  PTG manufactures ammunitions that are then sold and distributed worldwide, including to the United States.

12.     With Grasso Holdings the majority shareholder in PTG, Mr. Grasso is the Chairman of its Supervisory Board and is in a controlling position on the Board of Directors of PTG. Grasso Holdings, and by extension Mr. Grasso, acquired a majority in PTG to produce and subsequently import and distribute its own brand of ammunition into the United States: "MAXXTech" ammunition.

13.     Similar to Mr. Grasso, Defendant Kadrija Kolic is a member of the Supervisory Board of PTG, but is a minority shareholder in PTG. In addition to his position at PTG, Mr. Kolic is co-owner of KM Trade, an arms and equipment company which specializes in distributing, marketing, and selling weapons, ammunition, and related equipment. Like DAG Ammo, KM Trade is a customer of PTG and purchases ammunition from the factory for distribution to consumers.

14.     Mr. Kolic's co-owner of KM Trade is Defendant Nihad Masic. Mr. Masic is also a minority shareholder in PTG, but, unlike Mr. Kolic, is not a member of the Supervisory Board of PTG.

15.     DAG Ammo works in concert with and for the benefit of Grasso Holdings.

3

Specifically, DAG Ammo is Grasso Holdings' sole licensed importer of record into the United States for all Grasso Holdings' branded ammunitions, including those manufactured by PTG. As previously noted above, one such brand is Grasso Holdings' MAXXTech ammunition. Said ammunitions are then generally sold to a well-established wholesale/retail distribution customer base of Grasso Holdings.

16. DAG Ammo also acts as the sole importer of PTG ammunition for other third-party distributors under the condition said distributors pay Grasso Holdings a commission on all such sales in recognition of Grasso Holdings' exclusive rights to distribute PTG ammunition in the United States.

17. Moreover, DAG Ammo also acts as a distributor for Grasso Holdings as DAG Ammo has a well-established dealer base to distribute Grasso Holdings' ammunition. To do so, DAG Ammo purchases Grasso Holdings' ammunition at the Grasso Holdings' wholesale price and distributes said ammunition to their customers.

18. Historically, KM Trade, co-owned by Mr. Kolic and Mr. Masic, purchases and distributes PTG ammunition throughout Europe.

19. PTG, Mr. Kolic, Mr. Masic, and KM Trade have acknowledged and agreed to Grasso's Holdings exclusivity in the United States.

**A.    DAG Ammo's Trade Secrets and Confidential and Proprietary Information**

20. As discussed above, DAG Ammo acts as an importer of PTG ammunition for third-party distributors. One company DAG Ammo imports for is Zenith Quest Corporation ("Zenith Quest") which specializes in distributing and marketing firearms and ammunition throughout the United States.

21. On or around April 30, 2020, DAG Ammo purchased for importation and sale into the United States a large production of ammunition from PTG to fulfill a number of outstanding

4

orders. Additionally, PTG had a surplus of ammunition not sold under a previous contract with another distributer. Zenith Quest agreed to purchase and distribute the foregoing PTG ammunition in the United States. DAG Ammo having all necessary licenses and purchase orders in place for importation, acted as the buyer and importer of PTG ammunition for Zenith Quest.

22.     On or around June 23, 2020, DAG Ammo entered into a contract for the importation and sale of PTG ammunition to Zenith Quest ("the Contract").

23.     The Contract between DAG Ammo and Zenith Quest contains DAG Ammo's protected intellectual property, including but not limited to its confidential and proprietary trade secrets, which include, but are not limited to, financial and business information regarding DAG Ammo's confidential, non-public pricing strategy, pricing information, and the details of the confidential relationship between DAG Ammo and Zenith Quest ("Trade Secrets").

24.     To protect all confidential and proprietary information it receives from third-parties, it is common practice at PTG for all purchase orders and contracts concerning the purchase of ammunition from PTG to be sent to the General Director at PTG, Mr. Adnan Cengic. In his capacity as General Director, Mr. Cengic then reviews the terms and conditions of any such agreement to confirm PTG's ability to comply with the terms set forth therein. For any contracts concerning the purchase of over €250,000 worth of ammunition, PTG's Supervisory Board must review and vote to approve the contract before it can be executed.

25.     It is further common practice to protect all confidential and proprietary information PTG receives from third-parties for no one outside of PTG's General Director and Supervisory Board have access to or the authority to access the confidential information contained in a contract concerning the purchase of PTG ammunition. Only through the affirmative authorization of the owner of the confidential and proprietary trade secrets as obtained by the General Director at PTG

may such materials be given to a third-party.

26.     In accordance with PTG's common practice for contract fulfillment, on or around June 24, 2020, the Contract and accompanying Purchase Order were sent to Mr. Cengic for review.

27.     Following submission of the Contract to PTG, Mr. Kolic, in his position as a member of the Supervisory Board, requested a copy of the Contract for review.  Mr. Cengic complied with Mr. Kolic's request as per common practice at PTG.

28.     Mr. Kolic is not employed by nor an agent of DAG Ammo in any capacity. Although granted access to PTG's and DAG Ammo's confidential information by virtue of his capacity as a member of the Supervisory Board for PTG, Mr. Kolic did not and does not have permission from DAG Ammo nor the authority to provide the Contract, or information regarding the same, to anyone outside of PTG.

29.     As such, Mr. Kolic did not have the permission nor the authority to share the Contract with any third parties, including KM Trade, or their employee, agent, representative, director, advisor, or shareholder, including Mr. Masic, who was not a member of PTG's Supervisory Board.

30.     At no point was Mr. Cengic contacted by either Mr. Kolic or Mr. Masic requesting authorization from DAG Ammo to disclose the Contract to Mr. Masic or KM Trade.

**B.     Misappropriation of DAG Ammo's Trade Secrets**

31.     Defendants' intentions to misappropriate and misuse DAG Ammo's Trade Secrets became clear in late 2020 when Defendants began their attempts to break into the United States market, in contravention of the parties' agreed-upon distribution arrangement.  As stated above, Mr. Kolic and Mr. Masic agreed Grasso Holdings, through its designated importer DAG Ammo, would be the exclusive importer and distributer of PTG ammunition in the United States.

32.     However, with production difficulties due to the ongoing COVID global pandemic

6

and a corresponding surge in demand for ammunitions in the United States, Grasso Holdings and DAG Ammo fell behind in their ability fulfill existing customers' orders. As is customary for them, Grasso Holdings committed to fulfilling its current customer order before considering adding any new customers regardless of market demand in the United States.

33.     Defendants, leveraging Plaintiff's Trade Secrets, as detailed below, decided to seize the opportunity in an attempt to capitalize on the United States market demand and turn a significant profit in the United States by selling PTG ammunition at a higher price than detailed through back channel dealings with third-parties.

34.     Mr. Grasso first became suspicious of Defendants' misappropriation of its Trade Secrets on or about September 17, 2020, when Mr. Masic raised his apparent concerns regarding the Contract, including the pricing set forth therein, and the profit margins expected for PTG from the Contract. Mr. Grasso sent a responsive email on September 22, 2020, addressing Mr. Masic's concerns and noting that KM Trade should not have had access to the Contract.

35.     Mr. Grasso's suspicions that Defendants had access to the Contract and the proprietary trade secrets therein grew when on September 24, 2020, he received an email from Adnan Cengic, the Director of PTG, translating an email from Mr. Kolic discussing his knowledge of the Contract and comparing its terms to those set forth in a contract KM Trade was finalizing with a Polish entity. The email was signed by both Mr. Kolic and Mr. Masic.

36.     On information and belief, on or about September 17, 2020, KM Trade negotiated a contract with Alfa LLC, a Polish company. Pursuant to that agreement, KM Trade would supply Alfa LLC with ammunition manufactured by PTG under a new brand "Best of the West" ("BOTW"), and Alfa LLC would, in turn, import and distribute the PTG ammunition in the United States.

7

37.     Grasso Holdings was made aware of KM Trade's contract with Alfa LLC on October 14, 2020, when Mr. Grasso received an email from Mr. Cengic translating an email from Mr. Kolic setting forth KM Trade's planned importation and distribution of ammunition manufactured by PTG into the United States under the label "Best of the West" through Alfa LLC using U.S. importer Studebacker Defense Group to end user European Sales and Distribution LLC.

38.     Concerned about KM Trade's apparent encroachment on Grasso Holdings' exclusivity related to the United States, Mr. Grasso looked into those companies working with KM Trade to distribute and sell in the United States PTG ammunition.

39.     Unfamiliar with European Sales and Distribution LLC ("European Sales"), Mr. Grasso investigated the company and discovered European Sales was located at 625 Cola Dr, Clarksville, TN 37043.

40.     Mr. Grasso recognized the address for European Sales as that of a longtime customer of Grasso Holdings: World Outdoor Resources, LLC d/b/a The Shooting Shop and Midsouth Shooters Supply. Mr. Grasso contacted the General Manager of The Shooting Shop, Jordan Jere, to inquire about their business activities as European Sales.

41.     Mr. Jere informed Mr. Grasso European Sales had a non-disclosure agreement concerning the ammunition sales and was thus unable to divulge any specifics. However, Mr. Jere did explain that European Sales did not know that the undisclosed party who approached him was discussing ammunition supplied by PTG. Moreover, Mr. Jere emphasized that European Sales never would have entered into any such sales discussions if he knew the undisclosed party was attempting to fraudulently sell PTG ammunition.

42.     Mr. Grasso also contacted David King, the owner of World Outdoor Resources and a friend of Mr. Grasso's, on or around October 16, 2020 to discuss European Sales distribution

and sale of PTG ammunition. Mr. King confirmed Mr. Jere's explanation that European Sales was never informed the ammunition discussed for sale involved PTG.  Mr. King reassured Mr. Grasso he had no interest in working with the undisclosed party to undermine Grasso Holdings' exclusivity.

43.     In a Supervisory Board meeting held on December 1, 2020, Mr. Grasso objected to KM Trade's contract with Alfa LLC arguing the contract threatens DAG Ammo's exclusive distribution of PTG ammunition in the United States. Mr. Kolic vehemently disagreed, but the implementation of the KM Trade contract with Alfa LLC was ultimately voted down by a majority vote of the Supervisory Board.

44.     On December 23, 2020, Mr. Grasso received a concerning email from Piotr Sapiezynski, the owner of Alfa LLC, regarding its agreement with KM Trade. In his email, Mr. Sapiezynski stated that during negotiations with KM Trade, Mr. Masic misrepresented himself as the majority shareholder of PTG with decision-making authority. Further, Mr. Masic misrepresented to Mr. Sapiezynski that KM Trade was the only representative of PTG and PTG did not have a distributor in the United States.

45.     In a series of emails from December 25-28, 2020, Mr. Grasso corrected Mr. Masic's false statements and explained PTG already has commitments to the United States market which must be filled before any new customers, including Alfa LLC, could become a customer to PTG. Moreover, contrary to Mr. Masic's promises, PTG has not and will not create a new brand for sale in the United States because the MAXXTech is the sole PTG brand approved for sale in the United States and the creation of the new BOTW brand is not possible.

46.     On January 5, 2021, Mr. Sapiezynski reaffirmed Mr. Masic's duplicitous behavior concerning his relationship and ownership of PTG and informed Mr. Grasso that Alfa LLC is

seeking assistance from the Ministry for Foreign Affairs of Poland regarding this situation. Mr. Sapiezynski specifically noted that Mr. Masic's behavior exposed Alfa LLC and their American partners to serious financial losses.

47.    On information and belief, on or around January 7, 2021, an individual from Alpha Omega Brokerage, LLC ("Alpha Omega") identifying himself as "Lucifer Morningstar" ("Morningstar") reached out to the manager of True Shot Gun Club located in Tempe, Arizona, a Mr. Kyle Reed, offering to sell MAXXTech ammunition through the ammunitions distributor United Forces Enterprises ("UFE").

48.    True Shot Gun Club is owned by World Outdoor Resources, LLC and similar to its parent company, as discussed in paragraphs 40-42 above, is a longtime customer of Grasso Holdings. As such, Mr. Reed was personally familiar with Grasso Holdings and its MAXXTech ammunition.

49.    After his conversation with "Lucifer Morningstar" of Alpha Omega, Mr. Reed contacted Conor Pastore, the son-in-law of Mr. Grasso, a salesman for Grasso Holdings' ammunitions who frequently works with True Shot Gun Club, about the offer of sale from Alpha Omega. Mr. Pastore informed Mr. Grasso of his conversation with Mr. Reed and passed along the contact information for Mr. Morningstar of Alpha Omega.

50.    Mr. Grasso then contacted Mr. Morningstar of Alpha Omega to discuss their supposed sale of MAXXTech ammunition. During their conversation, Mr. Morningstar said Alpha Omega had rights to the MAXXTech brand ammunition with exclusive rights to distribute and sell the same.

51.    Mr. Grasso refuted Mr. Morningstar's assertions, explaining Grasso Holdings is the owner of MAXXTech brand ammunition and majority shareholder of PTG. Further, Mr. Grasso

explained PTG has not contracted with any third-party company, now or in the future, for the importation, distribution, and/or sale of Grasso Holdings' MAXXTech ammunition. Mr. Grasso ordered Alpha Omega to cease all fraudulent sales MAXXTech brand ammunition.

52.     Following his call with Mr. Morningstar, that same day, Mr. Grasso sent an email to all customers warning of fraudulent offers of MAXXTech label ammunition, including third-parties making misrepresentations concerning availability of the same, noting that Grasso Holdings has no intention of selling outside their current list of customers.

53.     Following Mr. Grasso's January 7, 2021 email to his customers, he received word via Lisa Weaver, a contractor for Grasso Holdings, that the Shooting Shop had also been contacted by a "Lucifer Morningstar" offering to sell MAXXTech label ammunition.

54.     On January 22, 2021, Mr. Grasso received a letter from John R. Schreiber of O'Neil Cannon Hollman DeJong & Laing on behalf of United Forces Enterprises ("UFE") and Alpha Omega Brokerage, LLC ("Alpha Omega"). The letter asserted that UFE had been recently awarded the right to purchase and distribute the MAXXTech ammunition line manufactured by PTG, and UFE had recently began marketing it for sale through Alpha Omega. Mr. Schreiber's letter demanded that Mr. Grasso immediately cease and desist any further misrepresentations regarding his ownership of the MAXXTech brand and/or the MAXXTech manufacturing plant, PTG, as it is interfering with his client's business.

55.     Counsel for Mr. Grasso responded to the demand on January 29, 2021, refuting all allegations of misrepresentation along with proof of ownership of the MAXXTech trademark and controlling interest in PTG. The response specifically noted Mr. Grasso was not aware of any contractual relationship that may exist between UFE and Alpha Omega and PTG with respect to the distribution of MAXXTech ammunition and never would have approved of any contract for

the distribution of MAXXTech ammunition in the United States for anyone other than Grasso Holdings.

56.     Upon information and belief, and based on the foregoing, Defendants have fraudulently misled and/or attempted to fraudulently mislead numerous organizations, including but not limited to Alfa LLC, Studebacker Defense Group, European Sales and Distribution LLC, United Forces Enterprises, and Alpha Omega Brokerage, LLC, into believing they are also owners and/or distributers of MAXXTech ammunition as produced by PTG for the purpose of importing, selling, and distributing PTG ammunition into the United States. Defendants' actions are a clear attempt by KM Trade to circumvent Plaintiff's exclusivity in the United States market place.

57.     On March 10, 2021, Mr. Masic sent Mr. Grasso a hostile email, confirming he was in possession of the Contract, arguing the prices set forth in the Contract were shortchanging the profits for PTG, and threatened to "inform syndicate on Federal and Government level, Federal Directorate for Military Industry, and Prime Minister Office" of the Contract and Mr. Masic's opinions related thereto.

58.     Mr. Masic has acted on his threats and has taken action to undermine Plaintiffs' importation of ammunitions in the United States.

59.     On April 19, 2021, the Ministry of Foreign Trade and Economic Relations of Bosnia and Herzegovina refused PTG's license for the export of weapons and military equipment wherein the designated importer for the United States market is DAG Ammo Corp. The reason for refusal was simply that the Security Agency of BiH, the primary intelligence agency of Bosnia and Herzegovina, in a confidential letter dated April 6, 2021, did not provide a positive opinion to the Ministry to approve the export of weapons and military equipment.

60.     On information and belief, Defendants contacted the Security Agency of BiH,

amongst other possible government agencies, seeking to disrupt and undermine Plaintiffs' business through the distribution and mischaracterization of DAG Ammo's Trade Secrets. Prior to Defendants' misappropriation of DAG Ammo's Trade Secrets, PTG with DAG Ammo as the designated importer, had never been denied its license to for the export of weapons and military equipment to the United States.

61.     Currently, if the denial of PTG's license to export to the United States is not reversed, Plaintiff's ability to import to the United States will cease on July 29, 2021 as that is when the currently valid export license will expire.

62.     On information and belief, and as demonstrated by the above, as efforts to go around Plaintiffs' exclusivity have been unsuccessful, Defendants are now attempting to remove Plaintiffs from the United States Market place entirely.

63.     On information and belief, Defendants have also followed-up their threats to disseminate the Trade Secrets to PTG's employees. Through the distribution and mischaracterization of DAG Ammo's Trade Secrets, the workers are now demanding an increase in wages. Following a March 9, 2021 meeting between the Management Board of PTG and the Trade Union Board of PTG—wherein Mr. Cengic explained the financial situation of PTG, including the financial difficulties PTG has faced due to the Pandemic—demands for wage increases have steadily grown. Following a series of email between the Director of PTG and Union representatives, on April 27, 2021, the Union Organization of PTG issued a warning that unless their demands for wage increases are met they are planning to instigate a warning strike and a general strike.

64.     Defendant's activities are in direct violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*

65.     In addition to the relief provided by the above statute, as well as compensatory damages, attorneys' fees and costs, Plaintiffs are seeking immediate injunctive relief (in the form of a temporary restraining order and preliminary injunction) to prevent irreparable harm arising from Defendants' ongoing activities, including but not limited to:

        a.    barring of Defendants from marketing, selling, or offering its competing product in the United States;

        b.    restraining Defendants from any further disclosure of DAG Ammo's proprietary information to unauthorized third-parties;

        c.    requiring Defendants to take back any information it has already provided to unauthorized third-parties; and

        d.    requiring Defendants return all proprietary information belonging to DAG Ammo which is in their possession, custody, and/or control.

## FIRST CLAIM FOR RELIEF

### Trade Secret Misappropriation
### Defend Trade Secrets Act, 18 U.S.C. § 1836

66.     Each and every allegation set forth in the foregoing paragraphs, including documents reference therein, are alleged and incorporated as if fully set forth herein.

67.     The Contract contains DAG Ammo's Trade Secrets.  Plaintiffs takes reasonable measures to keep such information secret, as evidence by PTG's common practice to sequester all confidential material to the supervision of PTG's General Director and release such materials only to members of PTG's Supervisory Board for use in business assessment and/or evaluation. Otherwise such materials are only available through the authorization of the owner of the confidential and proprietary trade secrets.

68.     The Trade Secrets derive independent economic value from not being generally

known to, or readily ascertainable by, others through proper means.  The Trade Secrets are not generally known, and Plaintiffs have enjoyed a competitive advantage as a result.  The Trade Secrets are not readily ascertainable by others through proper means.  In particular, Defendants were unable to readily ascertain the Trade Secrets by proper means.

69.    Defendants obtained access to the Contract and the underlying Trade Secrets through improper means.  Mr. Kolic procured a copy of the Contract through his position as a member of the Supervisory Board of PTG and disseminated that information outside of PTG to Mr. Masic and KM Trade for personal gain.  Mr. Kolic's conduct was completely unauthorized: DAG Ammo had never given Mr. Kolic permission to provide, transfer, or share the Contract to or with third-parties.  In so doing, Mr. Masic and KM Trade accessed and used the Contract for the sole purpose of misappropriating and misusing the Trade Secrets.

70.    Defendants obtained access to DAG Ammo's Trade Secrets under circumstances giving rise to a duty to maintain their secrecy.  As a member of the Supervisory Board, Mr. Kolic was forbidden from disclosing DAG Ammo's Trade Secrets and other confidential and proprietary information to any party absent pre-approval and pre-authorization by DAG Ammo.  DAG Ammo at no point provided such authorization or approval.

71.    Mr. Kolic was under a duty not to use or disclose any of DAG Ammo's Trade Secrets; Mr. Kolic willfully breached that duty.  Mr. Kolic misused DAG Ammo's Trade Secrets and deliberately disclosed them to others in the course of copying and disseminating them for his, Mr. Masic's, and KM Trade's own economic gain.  Similarly, Mr. Masic misused DAG Ammo's Trade Secrets and deliberately disclosed them to others in the course of copying and disseminating them for his, Mr. Kolic's, and KM Trade's own economic gain.

72.    Defendants obtained economic value from their misappropriation and unauthorized

15

use of the Trade Secrets.

73.     By improperly using and disclosing DAG Ammo's Trade Secrets, Defendants have and will continue to use such information to Plaintiffs' detriment in the future if not enjoined.

74.     Plaintiffs are entitled to an injunction prohibiting Defendants from further use or disclosure of DAG Ammo's Trade Secrets. 18 U.S.C. § 1836(b)(3)(A).

75.     Defendants' misappropriation of DAG Ammo's Trade Secrets has caused and/or will cause Plaintiffs damage. Such damage includes but is not limited to: loss of the Trade Secrets themselves, loss of control over the Trade Secrets, loss of brand reputation and goodwill, and loss of current and future business opportunities. Damage to Plaintiffs will be irreparable if Defendants proceed to inhibit Plaintiffs' business relations.

76.     Plaintiffs are entitled to damages for both their actual losses and for Defendants' unjust enrichment that is not addressed in computing damages for actual loss, or in the amount of a reasonably royalty for Defendants' unauthorized use of DAG Ammo's Trade Secrets. 18 U.S.C. § 1836(b)(3)(B).

77.     Defendants willfully and maliciously misappropriated DAG Ammo's Trade Secrets. There was nothing innocent or unknowing about Defendants' misappropriation and conspiracy to undermine Plaintiffs' business and business relations.

78.     Defendants' willful and malicious misappropriation entitles Plaintiffs to exemplary damages in an amount up to twice the amount of actual damages, as well as to the attorneys' fees incurred in prosecuting this action. 18 U.S.C. § 1836(b)(3)(C)-(D).

**REQUEST FOR RELIEF**

THEREFORE, Plaintiffs request the following relief:

A.      Preliminary and Permanent injunctive relief that:

1.      Defendants, as well as KM Trade's employees and agents, be immediately

restrained from, directly or indirectly, publicly releasing any confidential and proprietary information of Plaintiffs in any manner;

2. Defendants, as well as KM Trade's employees and agents, be immediately restrained from, directly or indirectly, releasing any products or services using Plaintiff's confidential, proprietary or trade secret information;

3. Defendants, as well as KM Trade's employees and agents, be immediately restrained from, directly or indirectly, engaging in any activities related to the importation and/or distribution of any products that in any way uses, relies upon, is based on or discloses any of Plaintiffs' confidential, proprietary or trade secret information.

4. Defendants, as well as KM Trade's employees and agents, immediately return all of Plaintiffs' confidential, proprietary or trade secret information which is in their possession, custody, and/or control.

B. Compensatory damages in an amount to be proven at trial;

C. Consequential damages in an amount to be proven at trial;

D. Disgorgement of any unjust enrichment;

E. Statutory damages, including but not limited to reasonable royalties pursuant to 18 U.S.C. § 1836(b)(3)(B);

F. Exemplary damages up to twice the amount of actual damages pursuant to 18 U.S.C. § 1836(b)(3)(C);

G. Punitive damages;

H. Costs of this action, pursuant to Fed. R. Civ. P. 54(d)(1);

I. Attorneys' fees and costs, including those pursuant to 18 U.S.C. § 1836(b)(3)(D);

J.     Pre- and post-judgment interest; and

K.     All such further relief, equitable or otherwise, as this Court may deem appropriate

to award.

Dated: May 21, 2021                              Respectfully Submitted,

*/s/ Daniel P. Mullarkey*
Daniel P. Mullarkey
POLSINELLI PC
1401 I Street, NW, Suite 800
Washington, DC 20005
dmullarkey@polsinelli.com
Phone: (202) 783-3300
Fax: (202) 783-3535

Fabio Marino (*pro hac vice* application
forthcoming)
POLSINELLI PC
3000 El Camino Real, Bldg. 4, Ste. 200
Palo Alto, California 94306
fmarino@polsinelli.com
Phone: (650) 461-7700
Fax: (650) 461-7701

*Attorneys for Plaintiffs DAG Ammo, Corp. and
Grasso Holdings, Inc.*